**I. Melbourne GREENBERG, M.D.,
Plaintiff–Appellant,**

v.

**ETHICON ENDO–SURGERY,
INC., Defendant–Appellee.**

No. 96–1023.

United States Court of Appeals,
Federal Circuit.

Aug. 8, 1996.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
Oct. 10, 1996.

Mark T. Banner, Banner & Allegretti, Ltd., Chicago, Illinois, argued, for plaintiff-appellant. With him on the brief were D. Dennis Allegretti, Boston, Massachusetts, and David M. Frischkorn, Thomas K. Pratt, and Christopher J. Renk, Chicago, Illinois.

Harry J. Roper, Roper & Quigg, Chicago, Illinois, argued, for defendant-appellee. With him on the brief were Raymond N. Nimrod and Aaron A. Barlow.

Before MICHEL, Circuit Judge, NIES,* Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

This appeal arises from a patent dispute involving surgical instruments. The district court granted the motion of appellee Ethicon Endo–Surgery, Inc. (Ethicon) for summary judgment against appellant Greenberg, the patentee. Concluding that the district court erred in construing the claim at issue in this case, we vacate and remand for further proceedings.

I

The instruments at issue in this case are used in surgical procedures in which it is undesirable or impossible to make large openings in the patient's body. In such procedures, the surgeon makes a small incision, inserts one end of a long, thin surgical instrument into the patient's body, and positions the instrument at the point of surgery. By manipulating the handles at the proximal end of the instrument located outside the body, the surgeon causes the surgical tool at the distal end of the instrument to perform the desired surgical function.

During such a procedure, the surgeon may need to rotate the surgical tool at the distal

---

* Senior Circuit Judge Nies heard oral argument in this appeal and participated in the decision but died on August 7, 1996, before the opinion was filed.

end of the instrument. Prior art devices required the surgeon to rotate the entire instrument in order to rotate the surgical tool, which required the surgeon to hold the handles of the instrument in awkward positions. To eliminate that problem, one prior art device featured a wheel that permitted the surgeon to rotate the shaft of the instrument (and thus the surgical tool at the distal end) while the handles of the instrument remained in a fixed position. A drawback of that design was that the wheel could rotate freely, so that the surgeon would have to hold the wheel in the desired position with one hand while simultaneously performing the surgical operation with the other.

On June 23, 1987, U.S. Patent No. 4,674,-501 (the '501 patent) issued to appellant Greenberg. Dr. Greenberg's invention is similar to the prior art rotating wheel device, except that it includes a "detent mechanism" that inhibits the free rotation of the wheel by holding it in one of a number of predetermined positions until some force is applied to turn the wheel. The detent mechanism described in the '501 patent specification consists of a spring-loaded ball built into one of the handles of the instrument. The spring-loaded ball cooperates with a circular set of recesses on the face of the rotating wheel. The rotating wheel controls the rotation of the shaft of the instrument about its axis. As the rotating wheel turns relative to the handle, the spring-loaded ball seats sequentially in each of the recesses on the face of the wheel. As a result, the shaft of the instrument turns relative to the handles, but at each point at which the spring-loaded ball seats in one of the recesses, the shaft's orientation vis-a-vis the handles remains fixed until the surgeon again rotates the wheel.

In 1992, Dr. Greenberg filed suit against Ethicon, claiming that Ethicon had made and sold a number of devices that infringed his rights under the '501 patent. The accused devices fall into three categories. The "five millimeter instruments" feature a spring-loaded ball located in the handle. The spring-loaded ball cooperates with a set of longitudinal grooves in the circumference of the shaft. As the surgeon turns an indexing wheel attached to the shaft, the spring-load-ed ball seats sequentially in each of the grooves until the surgical tool at the distal end of the shaft reaches the desired orientation, at which it remains until the surgeon again applies force to the wheel. The "ten millimeter instruments" feature cooperating sets of gear-like teeth, one on the handle and one on an indexing wheel attached to the shaft. The surgeon can orient the surgical tool by pushing the wheel forward to disengage the teeth, rotating the wheel, and then releasing the wheel to allow the teeth to re-engage when the surgical tool reaches the desired position. The "Liga-clip instruments" feature a plastic tab on the handle that cooperates with a set of recesses built into the inside of an indexing wheel. By exerting rotational pressure on the wheel, the surgeon can force a nib on the plastic tab to engage each of the recesses in turn until the surgical tool is brought to the desired orientation, where it remains until the surgeon again applies force to the wheel.

Following discovery, Ethicon moved for summary judgment. Ethicon's motion focused on the "detent mechanism" element of claim 1 of the '501 patent, the claim on which Dr. Greenberg's lawsuit was principally based. After briefing and argument, the district court granted the motion.

Claim 1 of the '501 patent reads as follows, with the "detent mechanism" element highlighted:

A surgical instrument comprising a pair of axially matable and relatively slidable shafts each having at their distal ends cooperating working tools, a sleeve mounted adjacent the proximal end of said shafts, one of said shafts being fixedly attached to said sleeve for conjoint movement therewith, the other of said shafts extending freely through said sleeve and being exposed at its proximal end, a pair of handle members pivotally attached to each other and arranged scissor-like for manipulation by one hand, one of said handles being attached to said sleeve for conjoint axial movement and relative free rotary movement therewith, said sleeve and said one handle being arranged so that said sleeve is manipulatable by a finger of the same hand simultaneous with the manipu-

lation of said handle, **a radially enlarged wheel on said sleeve and said wheel and said one handle having a cooperating detent mechanism defining the conjoint rotation of said shafts in predetermined intervals,** said other handle being universally attached to the exposed proximal end of said freely extending shaft, said shafts being caused to reciprocate relative to each other on manipulation of said handle members and to rotate about their common axis by manipulation of said sleeve, whereby said tools may be operated and moved into selected rotary positions relative to the axis of said shafts.

After analyzing the term "detent mechanism" as used in the '501 patent, the district court concluded that the element containing that term set forth a means for performing a specified function and thus was subject to the provisions of 35 U.S.C. § 112, paragraph six (hereafter, section 112(6)). That statute permits a patent applicant to express an element in a combination "as a means or step for performing a specified function without the recital of structure ... in support thereof," but provides that when an applicant drafts a claim element in that fashion, the element will be construed to cover only "the corresponding structure ... described in the specification and equivalents thereof."

The district court determined that the detent-type mechanisms in each of the Ethicon devices performed the function set forth in the "detent mechanism" element: "defining the conjoint rotation of [the] shafts in predetermined intervals." The court concluded, however, that the evidence Dr. Greenberg proffered in response to Ethicon's summary judgment motion was inadequate to show that the detents found on Ethicon's devices were structurally equivalent to the detent mechanism disclosed in the specification of the '501 patent. According to the district court, the only evidence of structural equivalence appeared in an affidavit and accompanying materials submitted by Dr. Greenberg's expert, Dr. Joseph Dyro. The court ruled that Dr. Dyro's assertions of structural equivalence were "extremely conclusory" and that they were therefore insufficient to raise

an issue of fact as to infringement under section 112(6).

The district court also rejected Dr. Greenberg's argument that Ethicon's devices infringed under the doctrine of equivalents. With respect to that issue, the court again found that Dr. Greenberg had failed to raise a genuine issue of fact, principally because in the court's view Dr. Dyro's evidence was insufficient to raise a triable factual question of equivalency.

## II

■ Dr. Greenberg's principal contention on appeal is that the district court erred in construing the "detent mechanism" element of claim 1 of the '501 patent as a "means-plus-function" element within the meaning of 35 U.S.C. § 112(6). Dr. Greenberg argues that the "detent mechanism" element recites structure and is not in "means-plus-function" form. Accordingly, he contends that the "detent mechanism" element should not have been limited to the particular detent mechanism disclosed in the specification and its structural equivalents.

As this court has observed, "[t]he record is clear on why paragraph six was enacted." *In re Donaldson Co.,* 16 F.3d 1189, 1194, 29 USPQ2d 1845, 1849 (Fed.Cir.1994) (in banc). In *Halliburton Oil Well Cementing Co. v. Walker,* 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3, 71 USPQ 175 (1946), the Supreme Court held invalid a claim that was drafted in means-plus-function fashion. Congress enacted paragraph six, originally paragraph three, to overrule that holding. In place of the *Halliburton* rule, Congress adopted a compromise solution, one that had support in the pre-*Halliburton* case law: Congress permitted the use of purely functional language in claims, but it limited the breadth of such claim language by restricting its scope to the structure disclosed in the specification and equivalents thereof. *See Valmont Indus., Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039, 1041–42, 25 USPQ2d 1451, 1453–54 (Fed.Cir.1993); *In re Fuetterer,* 50 C.C.P.A. 1453, 319 F.2d 259, 264 n. 11, 138 USPQ 217, 222 n. 11 (1963).

The question whether a claim element triggers section 112(6) is ordinarily not a difficult one. Claim drafters conventionally use the preface "means for" (or "step for") when they intend to invoke section 112(6), and there is therefore seldom any confusion about whether section 112(6) applies to a particular element. In this case, the pertinent claim language ("detent mechanism defining the conjoint rotation of said shafts ...") is not in "means plus function" form, but the district court found that the claim language is equivalent to the more conventional "means plus function" formulation and should be accorded the same legal effect. The district court gave two principal reasons to support its ruling. First, the court concluded that "detent mechanism" in itself invoked section 112(6), because the term did not describe a particular structure but described any structure that performed a detent function. The court noted that both the dictionary definition of the word "detent" (i.e., "a device for positioning and holding one mechanical part in relation to another") and the definition of "detent mechanism" provided by Dr. Greenberg's expert (i.e., "[a]ny device for positioning and holding one mechanical part in relation to another so that the device can be released by force applied to one of the parts") were expressed in functional terms.

In addition, the district court reasoned that although claim 1 of the '501 patent employed the term "detent mechanism," the summary of the invention twice used "detent means" when referring to the detent that defined the rotation of the shafts at predetermined intervals, and that the two terms should therefore be viewed as synonymous, at least as used in the '501 patent. Thus, the court concluded that the term "detent mechanism" was equivalent to "means for," and the phrase "defining the conjoint rotation of said shafts in predetermined intervals" stated the function performed by the means.

We disagree with the district court's conclusions. In our view, the factors on which the district court relied do not justify treating the claim language at issue in this case as falling within the purview of section 112(6).

First, the fact that a particular mechanism—here "detent mechanism"—is defined in functional terms is not sufficient to convert a claim element containing that term into a "means for performing a specified function" within the meaning of section 112(6). Many devices take their names from the functions they perform. The examples are innumerable, such as "filter," "brake," "clamp," "screwdriver," or "lock." Indeed, several of the devices at issue in this case have names that describe their functions, such as "graspers," "cutters," and "suture applicators."

"Detent" (or its equivalent, "detent mechanism") is just such a term. Dictionary definitions make clear that the noun "detent" denotes a type of device with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms. *See Random House Unabridged Dictionary* 541 (2d ed.1993) ("a mechanism that temporarily keeps one part in a certain position relative to that of another, and can be released by applying force to one of the parts"); *Webster's Third New International Dictionary* 616 (1968) ("a part of a mechanism (as a catch, pawl, dog, or click) that locks or unlocks a movement"); G.H.F. Nayler, *Dictionary of Mechanical Engineering* (4th ed. 1996) ("A catch or checking device, the removal of which allows machinery to work such as the detent which regulates the striking of a clock."). It is true that the term "detent" does not call to mind a single well-defined structure, but the same could be said of other commonplace structural terms such as "clamp" or "container." What is important is not simply that a "detent" or "detent mechanism" is defined in terms of what it does, but that the term, as the name for structure, has a reasonably well understood meaning in the art.

Second, we do not agree with the district court that the term "detent mechanism" in the '501 patent should be treated as synonymous with the term "detent means" simply because the patent uses the term "detent means" in place of "detent mechanism" on two occasions in the "summary of the invention" portion of the specification. The drafter of the application that matured into the '501 patent appears to have been enam-

ored of the word "means," as the word is used repeatedly in the summary of the invention. A close reading of the specification reveals, however, that the term is used in that portion of the patent simply as a shorthand way of referring to each of the key structural elements of the invention. Each of those elements is subsequently described in detail, without the use of the term "means," in the "description of the invention" portion of the specification, and each is subsequently claimed, again without the use of the term "means," in claim 1 of the patent.

Finally, we disagree with the district court that the decision in *Interspiro USA Inc. v. Figgie Int'l Inc.,* 815 F.Supp. 1488, 27 USPQ2d 1321 (D.Del.1993), aff'd, 18 F.3d 927, 30 USPQ2d 1070 (Fed.Cir.1994), is directly on point here. One of the elements in that case claimed "detent means . . . for moving and maintaining [the] movable member" in a breathing regulator for a fireman's mask. The district court in *Interspiro* characterized that element as containing means-plus-function language and therefore invoking section 112(6), *see* 815 F.Supp. at 1504, 27 USPQ2d at 1329, a characterization with which this court concurred on appeal, *see* 18 F.3d at 930–31, 30 USPQ2d at 1072.

While the language in the *Interspiro* case was in classic "means-plus-function" format, the language in Dr. Greenberg's patent was not. Section 112(6) provides that an element in a claim for a combination "may be expressed" as a means for performing a function, which indicates that the patentee is afforded the option of using the means-plus-function format. The question then is whether, in the selection of claim language, the patentee must be taken to have exercised that option.

In the *Interspiro* case, the patentee's choice of "means-plus-function" language made it clear that the patentee had elected to invoke section 112(6). In this case, by contrast, the element in question did not use conventional "means-plus-function" language, no other element of the claim was in means-plus-function form, and nothing cited to us from the prosecution history or elsewhere

suggests that the patentee intended to claim in that fashion. There is therefore no reason to read the claim language in this case as reciting a means for performing a function, within the meaning of section 112(6).

■ We do not mean to suggest that section 112(6) is triggered only if the claim uses the word "means." The Patent and Trademark Office has rejected the argument that only the term "means" will invoke section 112(6), *see* 1162 O.G. 59 n. 2 (May 17, 1994), and we agree, *see Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 957, 220 USPQ 592, 597 (Fed.Cir.1983), *cert. denied,* 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984) (construing functional language introduced by "so that" to be equivalent to "means for" claim language). Nonetheless, the use of the term "means" has come to be so closely associated with "means-plus-function" claiming that it is fair to say that the use of the term "means" (particularly as used in the phrase "means for") generally invokes section 112(6) and that the use of a different formulation generally does not. In this case, because we have found no reason to depart from that general principle, we conclude that the phrase "cooperating detent mechanism defining the conjoint rotation of said shafts in predetermined intervals" was not intended to invoke section 112(6) and should not be construed to do so.

Because we conclude that the district court erred by holding that the "detent mechanism" element of claim 1 of the '501 patent is governed by the rule of construction set forth in section 112(6), we vacate the district court's order granting summary judgment to Ethicon and remand the case for further proceedings.

Each party shall bear its own costs for this appeal.

*VACATED AND REMANDED.*