GAJARSA, Circuit Judge,
dissenting.
The majority avoids the critical issue upon which this decision turns; i.e., whether 35 U.S.C. § 112, ¶ 6 governs the claim construction of the “spring means” limitation. In a brief footnote, the majority sweeps and brushes aside the means-plus-function analysis as unnecessary in light of the “plain language of the claims.” Maj. Op. 1253 n. 3. Without having analyzed the scope of the claims, the majority somehow concludes that the claim language covers only devices having separate “spring means” and “hinged arm” structures. Then applying this simplistic claim construction to analyze the sufficiency of the evidence, the majority improperly overturns the jury’s verdict finding infringement. For these reasons, I respectfully dissent.
Although the majority ignores the issue completely, the parties have vigorously contested the claim construction of the “spring means” limitation and have made this issue the focal point of their legal position before the district court and this court. The limitation reads: “a spring means connected to said hinged arm for urging said guard along said needle cannula toward said second position.” '544 pat *1262 ent, col.7 11.33-35. The parties disagree over whether the “spring means” language should be construed as a means-plus-function limitation pursuant to § 112, ¶ 6. The majority, however, dismisses the means-plus-function analysis entirely in a single footnote, asserting that the language of the claims is “unambiguous”:
Tyco ... contends that a separate spring is required because the spring means limitation is in means-plus-function format, see 35 U.S.C. § 112, ¶ 6 ... We need not reach this argument, however, because we conclude that — regardless of whether the asserted claims invoke section 112, paragraph 6 — an added spring element is required by the plain language of the claims.
Maj. Op. 1253 n. 3. First, it is unclear what the majority means by “an added spring element.” An “added spring element” does not appear in the “plain language of the claims,” specification, or prosecution history of the patent. Second, claim construction is necessary to determine the scope of the claims. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), aff'd, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The majority opinion injects ambiguity into the claims and fails to construe the claims as required by our case law. See, e.g., Phillips v. AWH Corp., 415 F.3d 1303 (Fed.Cir.2005) (en banc); Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576 (Fed.Cir.1996). It is impossible for the majority to determine the scope of the claims without undertaking a means-plus-function analysis. Accordingly, the majority’s claim construction is premised upon an inadequate foundation.
If a claim element “contains the word ‘means’ and recites a function,” there is a presumption that the claim is in means-plus-function form. Envirco Corp. v. Clestra Cleanroom, Inc., 209 F.3d 1360, 1364 (Fed.Cir.2000). That presumption can be rebutted, however, if the claim also “recites sufficient structure to perform the claimed function.” Id. If the claim term “is one that is understood to describe structure ... [it] is simply a substitute for the term ‘means for.’ ” Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1360 (Fed.Cir.2004).
To determine whether the claim term should be construed as a means-plus-function limitation, we begin by evaluating how the term “spring” is used in the specification and the intrinsic record. Phillips, 415 F.3d at 1315 (“[T]he specification is always highly relevant” and is “the single best guide to the meaning of a disputed term”). Next, the court should consider whether the “spring means” limitation contains additional structure to rebut the means-plus-function presumption. See Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1427 (Fed.Cir.1997) (holding that where a claim recites a function, but goes on to elaborate sufficient structure, the claim is not in means-plus-function format).
In this case, the written description defines the term “spring means” as a type of device that imparts a function of urging the safety guard toward the needle tip. A “spring” as defined in the written description denotes a type of device with a generally understood meaning in the mechanical arts. See Greenberg v. Ethicon Endo-Surgery, Inc., 91 F.3d 1580, 1583 (Fed.Cir.1996). Each embodiment described in the patent employs a type of spring; e.g., coil springs, plastic springs, hinged springs, and over-centered springs. '544 patent, col. 3 ll.5-7; id. at col. 4 ll. 40-42; id. at col. 5 ll.9-16; id. at col. 6 ll. 38-42. None of the embodiments employ any structure other than springs. Indeed, the patent contains no suggestion that the claims include urging mechanisms other than springs. Accordingly, the intrinsic evidence demonstrates that the '544 patent *1263 defines “spring means” as a particular structure — a spring.
Next, the court in a proper claim analysis should consider whether the claims elaborate sufficient structure to rebut the means-plus-function presumption. The '544 patent claims state that the function of the “spring means” is for “urging the guard along said needle cannula.” Id. at col.7 11.34-35. The claims go on to recite additional structure to achieve that function. Claim 1 recites “spring means connected to said hinged arm,” id. at col.7 11.34-35 (emphasis added), and claim 24 recites “spring means extending between said mounting means and said kinged arm,” id. at col.10 11.17-20 (emphasis added). Thus, the claim language demonstrates that the combination of the “spring means” and “hinged arm” perform the “urging” function. Accordingly, the claims include additional structural limitations to rebut the means-plus-function presumption.
Tyco obviously disagrees with this conclusion; however, its reliance on Unidynamics Corporation v. Automatic Products International, 157 F.3d 1311, 1314 (Fed.Cir.1998) is unavailing. This court in Unidynamics applied § 112, ¶ 6 to the claim limitation “spring means tending to keep the door closed.” In that case, the patent’s written description stated that “[t]he spring. ... is an example of spring means tending to keep the door closed.” Id. at 1319 (emphasis added). Accordingly, the “spring means” was not defined solely as a spring structure, but as any type of structure to perform the function. Furthermore, the Unidynamics court noted that the claim language did not provide additional structure following the “spring means” language. Id. It merely recited a function of “tending to keep the door closed.” Id. Therefore, the court there properly concluded that “spring means” was a means-plus-function limitation because neither the claim language nor the written description provided sufficient structure to rebut the § 112, ¶ 6 presumption. Id.
In this case, however, the written description defines “spring means” as a spring structure. For example, each embodiment employs a spring structure; e.g., coil springs, plastic springs, hinged springs, and over-centered springs. Unlike Unidynamics, the spring is not just an example of a spring means to perform the function; it is the only type of structure disclosed in the written description. Moreover, the claim language itself provides additional structure following the “spring means” language. For example, claim 1 recites “spring means connected to said hinged arm,” '544 patent, col.7 11.34— 35 (emphasis added), and claim 24 recites “spring means extending between said mounting means and said hinged arm,,” id. at col.10 11.17-20 (emphases added). Unlike Unidynamics, the claim language itself includes additional structure; e.g., the hinged arm and mounting means — to perform the function of urging the guard along the needle cannula. Here, the means-plus-function presumption is rebutted and the claims should not be construed according to § 112, ¶ 6. Therefore, the district court correctly construed the “spring means” limitation according to its ordinary meaning: “[t]he hinged arm is connected to a spring that moves the guard along the cannula toward the second position.” Becton, Dickinson & Co. v. Tyco Healthcare Group, LP, No. 02-1694-GMS, 2004 WL 2075413, at *4 (D.Del. Sept.16, 2004).
The majority first approves of the district court’s claim construction, see Maj. Op. 1253-54, but then proceeds to improperly import an extraneous limitation into the claims, which is contrary to our case law. See Comark Commc’ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed.Cir. *1264 1998). The majority asserts that “the unequivocal language of the asserted claims of the '544 patent requires a spring means that is separate from the hinged arm” because they are written as separate limitations in the claim language. Maj. Op. 1254. However, the unequivocal language articulates no requirement for separate structures. It merely recites “a spring means connected to said hinged arm for urging said guard along said needle cannula toward said second position.” The majority’s limitation requiring two separate structures is not supported anywhere in the intrinsic or extrinsic record. Such a claim interpretation violates our established tenants of claim construction prohibiting the court from reading extraneous limitations into the claims. E.I. du Pont de Nemours & Co. v. Phillips Petroleum, 849 F.2d 1430, 1433 (Fed.Cir.1988) (“It is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim.... But this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.”) (citation omitted).
The majority relies on CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co., 224 F.3d 1308, 1317 (Fed.Cir.2000), which states that “we must presume that the use of ... different terms in the claims connotes different meanings.” (emphases added). While this is correct, the majority fails to recognize that “the use of two terms in a claim requires that they connote different meanings, not that they necessarily refer to two different structures.” Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1333 n. 3 (Fed.Cir.2006) (emphases added); see also Intellectual Prop. Dev., Inc. v. UA-Columbia Cablevision of Westchester, Inc., 336 F.3d 1308, 1320 (Fed.Cir.2003). Indeed, it is well established that a single structure in an accused device may satisfy two different claim limitations. Intellectual Prop., 336 F.3d at 1320 n. 9 (“[W]e see no reason why, as a matter of law, one claim limitation may not be responsive to another merely because they are located in the same physical structure”); In re Kelley, 305 F.2d 909, 915-16 (CCPA 1962) (stating that two claim terms may read upon the same physical structure). In the absence of evidence requiring two structures, the claim language must be interpreted broadly to read upon an accused product containing the two claim terms, regardless of whether those elements are encompassed in one or two structures.
In the '544 patent, nothing in the claim language, written description or prosecution history requires that the “spring means” and “hinged arm” be separate structures. The plain language of the claims includes no such “separate structures” limitation. To the contrary, the written description contemplates that the “spring means” and “hinged arm” be included as part of the same “hinged arm assembly.” See, e.g., '544 patent, col.4 11.40-44 (stating that a spring may be encompassed “between” the joints of the hinged arm assembly); id. at col.5 11.66-68 (“proximal and distal segments ... of [the] hinged arm assembly ... can be articulated about [the] hinges.”). In other words, the “hinged arm assembly” is described as a structure with the “spring means” and “hinged arm” as components of that structure. There is no support in the written description requiring that the “spring means” and “hinged arm” be separate structures themselves. Accordingly, a proper claim construction does not require two separate structures for the “spring means” and “hinged arm.” The majority’s ruling improperly imports an extraneous limitation into the claims and fails to give the claim language its full, literal scope. By injecting this additional and extraneous limitation, the majority sidesteps the required analysis of whether the “spring *1265 means” limitations are prescribed by § 112, ¶ 6.
In addition to applying a wholly simplistic claim construction, the majority fails to consider substantial evidence on the record supporting the jury’s determination of infringement. The majority opinion states that:
The thrust of Becton’s infringement argument was that the hinges in Tyco’s needles contain stored energy and that when the hinged arm is unlatched, the hinges act as “springs” that cause the guard to move down the needle cannula. The fatal defect in this theory is that Becton failed to produce any evidence that this posited movement ever occurred. Becton did not provide any test data or even a single live demonstration showing that: 1) the hinges in the accused devices contained stored energy, or 2) they moved the guard even one millimeter down the needle cannula.
Maj. Op. 1257. However, the majority turns a blind eye to sufficient evidence supporting the jury’s determination of infringement. In reviewing a motion for judgment as a matter of law (“JMOL”) under Third Circuit law, we overturn a jury verdict “only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from whiijh a jury reasonably could find liability.” Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir.1993). In this case, the majority fails to view the evidence in the light most favorable to Becton and fails to draw reasonable inferences from the evidence introduced at trial. Had the majority properly analyzed the jury verdict, it would have concluded that there is sufficient evidence on the record supporting the finding of infringement.
First, the accused devices themselves were entered in evidence, and the jury was able to examine them. The jury requested and received additional samples of the accused safety needles during its deliberations. Observation of the device is sufficient to determine whether the accused devices have a spring that, by itself, moves the guard towards the needle tip once the hinged arm is unlatched. The jurors directly examined the devices and concluded that they infringed. The jury’s factual findings based on direct examination of the accused devices are entitled to deference. See, e.g., Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1329 (Fed.Cir.2002) (affirming the jury’s infringement verdict where the accused device was available to the jury).
Second, Becton’s expert, Mr. Garris, testified that the accused devices contain a spring that, by itself, moves the guard once unlatched. To show that the living hinges were responsible for motion, Becton’s expert demonstrated the activation of a Tyco Safety Needle and Blood Collector before the jury. Mr. Garris testified that a small movement occurs upon unlatching, which is caused by the living hinges. The jury is entitled to credit this testimony, particularly given that the jury viewed the device and could examine the action of the guard and the needle. We as an appellate court cannot and should not reweigh the reasonable evidentiary conclusions found by a jury and reverse its judgment.
Tyco argues that Mr. Garris’s opinion “was based entirely on a combination of forces working at the same time to move the guard, and not motion caused by the spring itself,” as required by the district court. But this is incorrect. There is testimony in the record that the court’s claim construction allows for a combination of forces “to get the process started;” e.g., to push the guard over the latch. Mr. Garris also testified that once the hinged arm is unlatched, the living hinge “springs *1266 up”, moving the guard “a little bit” in the direction of the needle tip.
Third, the jury is allowed to infer from the evidence that the living hinge, by itself, moves the guard towards the needle tip based on the fact that Tyco included a latch on its product. Mr. Garris testified that the latch “restrains” the stored energy imparted to the living hinges at the time that they are folded. Mr. Garris testified that:
[I]t is very obvious that there is a spring. And in the folding process, it’s very clear that energy was put in. So without doing anything, it was very clear that there was a spring which was biased in a way that would make the guard go toward the tip of the cannula.
Mr. Garris also explained that the latch functions to “hold back the spring force and prevent!] the hinged arm from deploying” while a health care worker is giving an injection.
Fourth, Becton presented evidence that the hinged arm of the accused products is, in fact, biased against the latch at the time of their use and, hence, will extend to move the guard forward once unlatched. Moreover, Becton played a video clip that shows Tyco’s expert removing the latch of a Safety Needle while holding the guard in its initial position. The evidentiary video shows that once the latch is removed and the guard is released, the spring, by itself, moves the guard toward the needle tip a small but visible distance. The jurors could reasonably have concluded that this videotaped evidence is sufficient to show infringement.
In sum, there is substantial evidence— the jury’s self-examination of the accused needle guards, the expert testimony regarding the “spring” in the guard, the presence of the latch to restrain the guard’s movement, and the video tape evidence showing movement of the guard in the absence of the latch — to support the jury’s finding of infringement. Accordingly, applying the test of the Third Circuit as outlined in Lightning Lube, it is improper to disturb the jury’s finding of infringement. The district court was correct in denying the JMOL.
In conclusion, the majority opinion is severely flawed in several aspects. Most importantly, it fails to conduct a claim construction analysis to determine whether construction of the “spring means” limitation is governed by § 112, ¶ 6. Indeed, the majority puts the cart before the horse by concluding that the claim language covers only devices having two separate structures, but fails to undertake a proper claim construction analysis. The majority then applies its simplistic claim construction to its infringement analysis in reviewing the denial of JMOL. Contrary to Third Circuit law, the majority fails to view the evidence in the light most favorable to Becton and improperly overturns the jury’s verdict finding infringement. The majority climbs Jacob’s Ladder in search of perfection in the jury verdict, but, by substituting its own fact finding for that of the jury, it fails to allow the jury to perform its proper function. For these reasons, I dissent from the judgment of the majority opinion.