NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**WILLIAM GRECIA,**
*Plaintiff-Appellant*

**v.**

**SAMSUNG ELECTRONICS AMERICA, INC.,**
*Defendant-Appellee*

_____

2019-1019

_____

Appeal from the United States District Court for the Southern District of New York in No. 1:16-cv-09691-RJS, Judge Richard J. Sullivan.

_____

Decided: August 20, 2019

_____

MATTHEW MICHAEL WAWRZYN, Wawrzyn & Jarvis LLC, Glenview, IL, argued for plaintiff-appellant.

MICHAEL HAWES, Baker Botts, LLP, Houston, TX, argued for defendant-appellee. Also represented by TIMOTHY S. DURST, Dallas, TX; JONATHAN DREW BRIT, NEIL P. SIROTA, New York, NY.

_____

Before LOURIE, CHEN, and STOLL, *Circuit Judges.*

CHEN, *Circuit Judge*.

William Grecia asserted claims 21, 22, 24, 25, and 27–30 of U.S. Patent No. 8,533,860 ('860 patent) in a patent infringement suit against Samsung Electronics America, Inc. in *Grecia v. Samsung Electronics America, Inc.*, No. 16–cv–9691 (S.D.N.Y. Sept. 7, 2018). At claim construction, the district court concluded that claim 21 invokes 35 U.S.C. § 112, ¶ 6 and is indefinite under § 112, ¶ 2.[1] Because claims 22, 24, 25, and 27–30 depend from claim 21, the district court ruled that those claims were likewise indefinite. For the reasons below, we *affirm* the district court's decision that claim 21, and thus also dependent claims 22, 24, 25, and 27–30, are invalid as indefinite.

BACKGROUND

The '860 patent relates to digital rights management (DRM) technology, which the specification defines as "a generic term for access control technologies used . . . to impose limitations on the usage of digital content across devices." '860 patent at col. 1, ll. 28–31. According to the specification, the implementation of traditional DRM systems did not permit users to access their digital content on multiple devices or share their content with others. *Id.* at col. 2, l. 67 – col. 3, l. 7. For example, the specification explains that traditional systems rely on content providers to maintain servers for receiving and sending authorization keys, but these content providers might discontinue the servers or go out of business, leaving consumers unable to access the digital content. *Id.* at col. 2, ll. 54–62. The '860 patent purports to solve these problems by storing

---

[1] Paragraphs 2 and 6 of 35 U.S.C. § 112 were replaced by § 112(b) and § 112(f) respectively when the AIA took effect. Because the application resulting in the '860 patent was filed before that date, we refer to the pre-AIA version of § 112.

user authorization information in the digital content's metadata (referred to as "branding" the metadata). *Id.* at col. 3, l. 52 – col. 4, l. 5. The '860 patent explains that access rights to the digital content can then be granted by cross-referencing user information against what is stored in the metadata of that digital content. *Id.* at col. 13, ll. 32–66.

Claim 21, which is the only claim at issue, is reproduced below:

> 21. A computer product comprising a memory, a CPU, a communications console and a non-transitory computer usable medium, the computer usable medium having an operating system stored therein, the computer product further comprising a *customization module*, the computer product authorizing access to digital content, wherein the digital content is at least one of an application, a video, or a video game, wherein the digital content is at least one of encrypted or not encrypted, the computer product configured to perform the steps of:

> receiving a digital content access request from the communications console, the access request being a read or write request of metadata of the digital content, the metadata of the digital content being one or more of a database or storage in connection to the computer product, the request comprising a verification token corresponding to the digital content, the verification token is handled by a user as a redeemable instrument, wherein the verification token comprises at least one of a purchase permission, a rental permission, or a membership permission, wherein the at least one of purchase permission, rental permission, or membership permission being represented by one or more of a tag, a letter, a number, a combination of letters and numbers, a successful payment, a rights token, a

phrase, a name, a membership credential, an image, a logo, a service name, an authorization, a list, an interface button, a downloadable program, or the redeemable instrument;

authenticating the verification token;

establishing a connection with the communications console, wherein the communications console is a combination of a graphic user interface (GUI) and an Applications Programmable Interface (API) wherein the API is obtained from a verified web service, the web service capable of facilitating a two way data exchange session to complete a verification process wherein the data exchange session comprises at least one identification reference;

requesting the at least one identification reference from the at least one communications console, wherein the identification reference comprises one or more of a verified web service account identifier, letter, number, rights token, e-mail, password, access time, serial number, address, manufacturer identification, checksum, operating system version, browser version, credential, cookie, or key, or ID;

receiving the at least one identification reference from the communications console; and

writing at least one of the verification token or the identification reference into the said metadata.

'860 patent at claim 21 (emphasis added).

The computer product of claim 21 includes "a CPU, a communications console, and a non-transitory computer usable medium," as well as a "customization module." '860 patent at claim 21. Claim 21 is otherwise silent with regards to the customization module, but the specification explains that the module "allows the user to customize the

user access panel of the encrypted digital media." *Id.* at col. 6, ll. 26–28. For example, the customization module "facilitates adding one or more of a banner, a logo, an image, an advertisement, a tag line, a header message and textual information to the user access panel of the encrypted digital media." *Id.* at col. 6, ll. 29–33.

The district court found that the terms "customization module" and "computer product" in claim 21 each invoked § 112, ¶ 6, and were indefinite under § 112, ¶ 2. J.A. 19–24. The district court also found that the term "metadata" was indefinite under § 112, ¶ 2. J.A. 24–25. Grecia appeals the district court's indefiniteness determinations, focusing its arguments solely on claim 21. This court has jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1).

DISCUSSION

A. The Claim Term "Customization Module" Invokes
§ 112, ¶ 6

We review the district court's claim construction here de novo because it relied only on evidence intrinsic to the '860 patent. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.,* —— U.S. ——, 135 S.Ct. 831, 841 (2015). To determine whether § 112, ¶ 6 applies to a claim limitation, the essential inquiry is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). We have traditionally looked to whether the limitation uses the word "means." If so, there is a rebuttable presumption that § 112, ¶ 6 applies; if not, there is a rebuttable presumption that the provision does not apply. *Id.* at 1348–49. Where, as here, a claim term lacks the word "means," the presumption can be overcome and § 112, ¶ 6 will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure for performing the claimed function. *Id.* at 1349.

As we have explained and the district court correctly noted, "'[m]odule' is a well-known nonce word that can operate as a substitute for 'means.'" *Williamson*, 792 F.3d at 1350. This is because "[t]he word 'module' does not provide any indication of structure because it sets forth the same black box recitation of structure . . . as if the term 'means' had been used." *Id.* Nor does the prefix "customization" impart structure, because it at best describes the module's intended functionality. And "customization module" stands alone in claim 21—there is nothing in the claim that describes the customization module, let alone imparts structure to the term.

On appeal, Grecia devotes ten pages of his Appeal Brief to the heading "Claim 21's 'Computer Product' or 'Customization Module' Terms Do *Not* Invoke § 112, ¶ 6," yet under that heading, never points to any language in claim 21 in support of the proposition that "customization module" is not a means-plus-function term. Appellant's Opening Br. at 18–27. Grecia complains that the district court ignored the claim language and specification, but Grecia's Appeal Brief hardly addresses the customization module. Instead, Grecia only refers in passing to dependent claims 23 and 24. Grecia's only argument on appeal appears to be that dependent claims 23 and 24 provide structure for claim 21.

But the limitations of claims 23 and 24 are not recited in claim 21, and nothing in these dependent claims demonstrates that the "customization module" is a term commonly understood by persons of skill to denote a specific algorithm or other structure. Moreover, each of these dependent claims attempts to further define the customization module by self-reference to its own "customization" function. *See* '860 patent at claim 23 ("wherein the *customization* module *customizes* the tag") (emphases added); *id.* at claim 24 ("wherein the *customization* module *customizes* the user access panel") (emphases added). These limitations are purely functional and fail to describe any structure. Grecia appears to admit as much by concluding that

the customization module "equips the computer product with the means to manipulate the 'verification token' to meet the user's purpose." Appellant's Opening Br. at 21.

In his Reply Brief, Grecia insists that claim 21 teaches *how* the customization module operates. But instead of citing any language in claim 21 that explains how customization is performed, Grecia points again to the purely functional limitations of dependent claims 23 and 24 and also to portions of the specification that disclose only the results of customization. *See* '860 patent at col. 6, ll. 26–33 ("customization module 206 facilitates adding one or more of a banner, a logo, an image, an advertisement, a tag line, a header message and textual information to the user access panel of the encrypted digital media"); *id.* at Fig. 3 (depicting a graphical user interface 301 with a particular message for the user). The only language that Grecia identifies in claim 21 is the recitation of the "customization module" itself and the verification token as a type of permission with various representations. *See* '965 patent at claim 21 ("wherein the at least one of purchase permission, rental permission, or membership permission being represented by one or more of a tag, a letter, a number, a combination of letters and numbers, a successful payment, a rights token, a phrase, a name, a membership credential, an image, a logo, a service name, an authorization, a list, an interface button, a downloadable program, or the redeemable instrument"). Contrary to Grecia's assertions, nothing in claim 21 explains *how* the customization module operates. At bottom, nothing in the claims or specification suggests that "customization module" would have been understood by persons of skill in the art to have a sufficiently definite meaning as the name for structure.

Unlike in *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003 (Fed. Cir. 2018), where we held that a person of skill would recognize the claimed "program" and "user interface code" as "specific references to conventional graphical user interface programs or code," *id.* at 1008, the "customization

module" is a black box recitation untethered to any specific structure. Instead, like the "distributed learning control module" that we held to be a means-plus-function term in *Williamson*, the "customization module" is directed to the "module" nonce word, the prefix to the "module" word imparts no structure, and the specification also fails to impart any structural significance to the term. *See Williamson*, 792 F.3d at 1351.

Grecia's reliance on *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) is also misplaced. [2] As an initial matter, our decision in *Apple* that the term "heuristic" should not be construed as a means-plus-function claim was under a strong presumption against the application of means-plus-function in the absence of the word "means." *Id.* at 1304. But that strong presumption was overruled in *Williamson*. *Williamson*, 792 F.3d at 1349. Moreover, in *Apple*, we noted that the "heuristic" term at issue had a "known meaning" with an explanation of *how* to achieve the output of the claimed "heuristic" based on specific rules such as the initial angle of finger contact with the screen, the number of fingers making contact, and the direction of movement of finger contact. *Apple*, 757 F.3d at 1300, 1303. But, as we have explained, nothing in the '860 patent or claims suggests that "customization module" has a known meaning or describes how the customization module operates.

---

[2] Grecia also misapplies our holding in *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, (Fed. Cir. 2003) in support of his argument that the customization module is not a means-plus-function term. In *Med. Instrumentation*, there was no dispute that the limitation at issue was written in means-plus-function form and therefore we did not need to address the threshold question of whether § 112, ¶ 6 applies. *Id.* at 1210.

Because the term "customization module" does not describe anything structural, the district court did not err in concluding that claim 21 is subject to 35 U.S.C. § 112, ¶ 6.

## B. The Specification Does Not Disclose Sufficient Structure Corresponding to the Claimed Function

Because the term "customization module" is a means-plus-function term, we must construe the term "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. A disclosed structure is a "corresponding structure" only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. *Williamson*, 792 F.3d at 1352. For a computer-implemented means-plus-function term, the corresponding structure is typically the algorithm disclosed in the specification for performing the claimed function. *Id.*; *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

Here, the only claimed functionality of the term "customization module" in claim 21 arises from the prefix "customization." But the specification fails to explain how such customization is performed. Instead, the specification only describes the results of customization, i.e., customizing a user access panel of encrypted digital media with information such as "a banner, a logo, an image, an advertisement, a tag line, a header message and textual information." '860 patent at col. 6, ll. 26–33; *see also id.* at claims 23–24. We have held that describing "the results of the operation of an unspecified algorithm" is not sufficient to transform the disclosure of a general-purpose computer into the disclosure of sufficient structure to satisfy § 112, ¶ 6. *Aristocrat Techs.*, 521 F.3d at 1335 (Fed. Cir. 2008). Because the '860 specification merely describes the results of customization without any algorithm for configuring the claimed module to obtain those results, we agree with the district court that the specification fails to disclose the

"corresponding structure" required under § 112, ¶ 6, thus rendering claim 21 indefinite under § 112, ¶ 2.

CONCLUSION

We have considered Grecia's remaining arguments and find them unpersuasive.  For the reasons stated above, we *affirm* the district court's conclusion that claim 21 is indefinite because the "customization module" term of claim 21 invokes § 112, ¶ 6 and the specification fails to disclose any structure corresponding to the claimed function.  We therefore need not reach the district court's conclusions with regards to the "metadata" and "computer product" terms.  Grecia makes no separate arguments for the asserted dependent claims, so we affirm the district court's invalidity ruling as to those claims as well.

**AFFIRMED**